STATE SAVINGS BANK OF LOGAN, Appellee, v. O. R. OSBORN et al., Appellants.

**EVIDENCE:** Parol as Affecting Writing—Want or Failure of Consideration—Conditional Delivery. Parol evidence is admissible between the holder of a promissory note and an endorser (the original parties) to show that the endorsement was made: (1) Without consideration—without the assumption of any liability on the part of the endorser; (2) on a consideration that had failed; (3) on the *condition* that the holder would see that the note was paid from other property of the maker then in the hands of the holder. (Sec. 3060-a16, Code Supp., 1913.)

*Appeal from Harrison District Court.*—E. B. WOODRUFF, Judge.

JANUARY 20, 1920.

ACTION at law upon a promissory note. Judgment for plaintiff against the defendant Davis, who appeals.—*Reversed.*

*Robertson & Havens,* for appellant.

*J. A. Murray,* for appellee.

WEAVER, C. J.—The note in suit appears upon its face to have been made by Osborn to the appellant Davis, who is alleged to have endorsed it to the plaintiff bank.

Defendant denies liability. The answer filed is unconscionably long, verbose, and involved in its statements, and, had the trial court stricken it on that account, giving defendant opportunity to replead his defense in better form, we should have no difficulty in affirming the order.

Stating the defenses on which reliance is placed, in briefer terms, they are, as we understand them, about as follows: (1) Denial made in general terms; (2) want of consideration for the appellant's endorsement of the note; (3) failure of consideration for the endorsement; (4) payment of the note by Osborn; (5) that there was never any delivery of the endorsed note to the plaintiff, or that the delivery was, at most, conditional; and (6) that the note was endorsed in consideration of a representation by the bank that it held a mortgage on Osborn's property of sufficient value to secure payment of all his debts to the bank, including the note in question, and that, if appellant would endorse said note, the bank would proceed to collect the same from the proceeds of the sale of said mortgaged property, and would apply the first money received on such sale to the payment of said note; that said promise and agreement were never performed, and were never intended to be performed, but were made with the fraudulent intent and purpose to entrap the appellant into an endorsement of the note, and that plaintiff did, in fact, collect enough from the security held by it to pay the note, but failed to apply it upon such indebtedness, as agreed.

The alleged facts on which these various defenses are sought to be founded are substantially as follows: The appellant Davis, a farmer, was about to hold a public sale, to dispose of a considerable quantity of personal property. Preparatory to such sale, he entered into an agreement with the bank by which said bank was to purchase all the promissory notes given by purchasers of the property so sold, and to that end, and to satisfy itself of the financial respon-

sibility of the makers of the notes, the bank was to be represented at the sale by one of its officers, who was to act as clerk, and to take the notes payable directly to itself, without endorsement or guaranty by the appellant. The sale was held, as contemplated. One Joy, an officer of the bank, served as clerk, and took the notes, making them all payable, as agreed, direct to the bank, except one note given by Osborn for $374.70. In making settlement with Osborn, Joy, contrary to the agreement between appellant and the bank, inserted the name of appellant as payee of the note, without appellant's knowledge or consent. At some time after the note of Osborn had been so taken by Joy, the latter requested appellant to endorse the note, as a matter of temporary accommodation only; and, upon the promise that the note so endorsed should not be considered delivered, as between appellant and the bank, and that the bank should hold it in possession only temporarily, until it could get a new note and security from Osborn for all his indebtedness to the bank, including said note, appellant did make the endorsement.

Later, as we understand the answer, the bank did obtain a new note from Osborn, stamped the first note "paid," and delivered it to Osborn. Thereafter, the appellant, at the request of the bank, endorsed the new note it had theretofore obtained from Osborn. The pleading further shows that, to obtain said endorsement, the bank, by the officer having the matter in charge, stated and represented to the appellant that it held a chattel mortgage on the property of Osborn to the value of more than $500, and that, if appellant would make the endorsement requested, the bank would credit and apply the first moneys collected from Osborn or from the said security to the payment of said note; and that, relying upon said representation and promise, appellant did endorse the note; that, thereafter, the bank did collect from the sale of said mortgaged property more

than enough money to pay and discharge said note, but, in violation of its agreement, it applied or credited such collections upon other claims held by it against Osborn.

The narrative of these alleged facts is restated and re- peated, in various forms and with various embellishments; but what we have said is sufficient, we think, to enable us to get at the meat of the controversy on which we are asked to pass.  The amended and substituted answer, setting up the defense or defenses to which we referred, was not de- murred to; but plaintiff moved the court to strike out sub- stantially everything contained in the pleading (except mere denials) as being "incompetent, irrelevant, and redundant matter."  The motion was sustained, and, defendant ex- cepting to the ruling and declining to further plead, judg- ment was rendered against him for the amount of the note.

In entering the ruling, the court explained its action by saying:

"This answer suggests what might raise several issues; but it seems to the court that, under the negotiable instru- ment law, the endorsement by the defendant upon the orig- inal note, of which the note in suit is but a renewal, would not admit of oral evidence to explain such endorsement."

I. Is there anything in the Negotiable Instruments Act which precludes the defense which appellant pleaded? Coun- sel for appellee lay much stress, in argument for an affirm- ance, upon the proposition that defendant, by its answer, set up a plea of fraud in the procurement of his endorse- ment; and it is said that the matters so pleaded are, at most, mere promises, to be performed in the future; and that a failure to so perform does not amount to fraud.  As a gen- eral, abstract proposition, this is, no doubt, true.  It is also true that the answer indulges very freely in the words "fraud" and "misrepresentation;" but, when shorn of its unnecessary and luxuriant verbiage, we still have left a

fairly intelligible plea of want of consideration and failure of consideration for the appellant's endorsement.

There is nothing in the Negotiable Instrument Act or in the familiar rule against parol evidence to vary the terms or legal effect of a writing which, as between the original parties, precludes plea or proof of no consideration or failure of consideration. *Farmers Sav. Bank v. Hansmann,* 114 Iowa 49; 7 Cyc. 690; *Agricultural Bank v. Robinson,* 24 Me. 274; *Lackawanna Trust Co. v. Carlucci,* 264 Pa. 226 (107 Atl. 693); *Coghlin v. May,* 17 Cal. 515.

The general principle of the law of contracts, that, to be valid and legally enforcible, as between the parties thereto, an agreement or undertaking of any kind must be supported by a consideration, is too elementary to call for citation of authorities. To that rule, commercial paper affords no exception.

This is not a case in which the plaintiff occupies the relation of an innocent purchaser of the paper or a holder in due course, if the allegations of the answer be true,— and, for the purposes of the appeal, they must be accepted as true, or, at least, as being susceptible of proof. The allegation is to the effect that the bank had entered into an agreement to purchase all the notes taken at the sale, and assure itself of the sufficiency of such notes by having its own officer act as clerk, make settlement with the purchasers, and take their notes direct to the bank itself, without the assumption of any personal liability thereon by the appellant. According to the pleading, the appellant never at any time had possession of or exercised any dominion over the note. It was taken by the bank, and was at all times held by it; and the endorsement was made, not by way of negotiation of the paper to the bank, but was a subsequent act or independent transaction which, if the answer be true, would require some consideration other than the original agreement. And if, as counsel say, the bank paid

for the note at the same rate and in the same manner as it paid for the other notes, it only did what it had bound itself to do. Still assuming the truth of the answer, it must be said that the notes, when taken, and all of them, including the Osborn note, were, all alike, the property of the bank from the moment of their execution and delivery to Joy for the bank. It was not within the power of Joy or the bank to avoid this result by inserting the appellant's name as payee in the Osborn note, without his knowledge or consent. Under such circumstances, the appellant was charged with no duty or obligation to take upon himself the liability of endorser. He was, in such case, no more than the nominal payee of the note; and if, under such circumstances, without some new or additional consideration, he did endorse the paper for no other purpose than to pass title thereto to the bank, or solely as a matter of temporary accommodation, to serve the purposes of the bank, then his plea of want of consideration would present a legitimate defense to any action upon his endorsement.

Appellee says, in avoidance of this defense, that, even if this be true as to the note and endorsement first made, it has no relevance at this time, because this action is upon a new note and new endorsement. Without taking time to consider other features of the answer bearing upon the proposition so urged, we think it quite clear that appellant does plead a failure of consideration as to this endorsement also, as we have before pointed out. The answer alleges that this last endorsement was made upon the assurance and promise of the bank that it held security by chattel mortgage upon the property of Osborn to a value in excess of this debt, and would apply the first money realized from such security to its payment. It is also alleged that, having thus secured the defendant's endorsement, the bank did collect and receive from said security an amount of money sufficient to pay off the note; but, instead of so applying it, as agreed,

it used the money in payment of other claims against Osborn, leaving the note in suit still unpaid.   If this be true,—and, for present purposes, it must be so taken,—then there was a palpable failure of consideration for the endorsement, and appellant may plead it in defense.  *Farmers Sav. Bank v. Hansmann,* 114 Iowa 49.

The foregoing is sufficient to indicate our view that the trial court erred in striking the defendant's answer, and that the judgment rendered against him must be reversed, and new trial ordered.

What we have said in this opinion in relation to matters of fact will, of course, be understood as having reference to the sufficiency of the answer, and not to the merits of the dispute between the parties.   That is a subject to be considered only when the issues have been framed, and the parties have both had opportunity to be heard.

For the reasons stated, the judgment below is reversed and cause remanded for further proceedings in harmony with this opinion.—*Reversed.*

LADD, GAYNOR, and STEVENS, JJ., concur.